```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA
```

PAMELA LORRAINE COLLINS,         )
                                 )
          Plaintiff,              )
                                 )
v.                                )     Case No. CIV-14-216-KEW
                                 )
CAROLYN W. COLVIN, Acting        )
Commissioner of Social           )
Security Administration,         )
                                 )
          Defendant.              )

## OPINION AND ORDER

Plaintiff Pamela Lorraine Collins (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 12, 1962 and was 50 years old at the time of the ALJ's decision.  Claimant completed his high school education and some vocational training.  Claimant has worked in the past as a nursing aide and housekeeper.  Claimant alleges an inability to work beginning February 23, 2009 due to limitations resulting from depression, back pain, posttraumatic stress disorder ("PTSD"), fatigue, anxiety, hypertension, insomnia, blurred vision, pain in her knee, legs, hands, and hips, and tingling and weakness

in her hands. She also suffers from flashbacks and visual hallucinations.

## Procedural History

On January 13, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On January 31, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") James Bentley in McAlester, Oklahoma. He issued an unfavorable decision on March 1, 2013. The Appeals Council denied review of the ALJ's decision on April 9, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work. The ALJ also determined that Claimant could perform light work with limitations in his step four and five RFC assessment.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) depriving Claimant of her constitutionally protected due process rights; (2) failing to provide a proper analysis at steps four and five which included all of Claimant's limitations; and (3) failing to perform a proper credibility determination.

**Due Process Considerations**

In his decision, the ALJ found Claimant suffered from the severe impairments of post-traumatic stress disorder ("PTSD"), Major Depressive Disorder, herniated lumbar disc with associated back pain. (Tr. 21). The ALJ determined Claimant retained the RFC to perform to perform her past relevant work as a housekeeper. (Tr. 26). The ALJ also concluded Claimant could perform light work. However, she requires a sit/stand option (meaning a temporary changes in position without leaving her work station). Claimant could perform simple tasks with some detail with routine supervision and could have occasional work-related contact with the general public. (Tr. 23).

After consulting with a vocational expert, the ALJ concluded that Claimant could also perform the representative jobs of parking lot attendant, small product assembler, table worker, and optimal goods assembler, all of which the ALJ determined existed in sufficient numbers in both the regional and national economies. (Tr. 27). As a result, the ALJ determined Claimant was not under

a disability since February 23, 2009 through the date of the decision. Id.

In a curious twist of an argument, Claimant contends her constitutional due process rights were violated when the ALJ failed to order an additional consultative evaluation because, she stated, the prior consultative examination did not examine her neck, shoulders, elbows, wrists, or hands and only lasted 10-15 minutes.

At the conclusion of the administrative hearing, Claimant's attorney requested that the ALJ "consider a new physical CE, possibly, with some x-rays, due to the lack of, objective testing, that my client's been able to afford." Upon inquiry, counsel requested that x-rays be taken of Claimant's low back, both hands, the right knee, and the wrists. (Tr. 76).

The ALJ acknowledged Claimant requested x-rays "of various bones." However, the request was denied in the decision because Claimant's stated primary reason for her inability to work full time was she could not mentally focus and the medical evidence in the record was sufficient to make a decision. (Tr. 24).

The constitutional requirement for procedural due process applies to social security hearings. Yount v. Barnhart, 416 F.3d 1233, 1235 (10th Cir. 2005) citing Allison v. Heckler, 711 F.2d 145, 147 (10th Cir. 1983). However, Claimant is confusing due process with the ALJ's duty to develop the record. Typically, a

due process argument is made when an ALJ utilizes post-hearing evidence without affording a claimant a hearing to cross-examine or challenge the evidence. Id. The failure to obtain a further consultative examination or more testing does not rise to a constitutional deprivation.

To the extent Claimant intended to argue that the ALJ failed to adequately develop the record, this assertion fails on the merits as well. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993).

The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.
>
> 20 C.F.R. § 416.909a(2)(b).

This Court does not perceive that any of these bases for ordering a consultative examination is present in this case. The record contained a consultative physical examination by Dr. Adel Malati, an assessment by Dr. Chad Crawley, and non-examining

8

evaluations by Dr. John Pataki and Dr. Donald Baldwin. (Tr. 339-46, 332-34, 350, 402). Ample evidence existed in the record to obviate the necessity for one further consultative examination.

**Step Four and Five Evaluation**

Claimant next asserts the ALJ's failure to order a consultative examination leaves the record without a functional assessment to support the ALJ's RFC findings. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and

9

a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). Alignment of the RFC and opinion evidence is nor required and does not render an RFC finding improper.

Moreover, the ALJ argued that Claimant's moderate limitation in social functioning and mild limitation in her activities of daily living and in concentration, persistence, or pace should have been accommodated in the RFC restrictions. "[A] moderate impairment is not the same as no impairment at all." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ did not treat it as such in arriving at his RFC findings. He found Claimant could only have occasional work-related contact with the general public. (Tr. 23). No evidence indicates that the mild restrictions impair Claimant's ability to engage in basic work activities.

Claimant also contends the ALJ should have included insomnia, hallucinations and flashbacks in the mental RFC limitations. Other than speculating as to the restrictions on attention and concentration which might be caused by these conditions, Claimant does not direct this Court to any evidence which would suggest that these conditions would impair Claimant's ability to engage in basic work activity.

10

Because this Court finds no error in the limitations contained in the RFC, the hypothetical questioning of the vocational expert is not erroneous. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). The ALJ's questioning accurately reflected the restrictions contained in the record.

Claimant also contends the ALJ failed to consider the findings of Claimant's treating physician that Claimant could not stand or walk longer than two to three hours in an eight hour workday. (Tr. 320-23). These records indicate that the source was a nurse and a physical therapist and the restriction was temporary, releasing Claimant back to work. Id. Because of the duration of the condition, it cannot constitute an impairment. 20 C.F.R. § 404.1509. No other work restrictions were placed on Claimant.

Claimant also challenges the ALJ's step four analysis that she could return to work as a housekeeper. Claimant states that she did not work as a housekeeper long enough for it to be considered past relevant work. Her testimony at the hearing indicated Claimant worked in that capacity for about one month. (Tr. 59). This Court is concerned that this work was not established as substantial gainful activity but, rather constituted an unsuccessful work attempt. 20 C.F.R. § 404.1574(a)(1). It is also difficult to assess this work under the three phased analysis of <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996) since it is almost impossible for the ALJ to have determined the demands of her past relevant work.

Thus, this Court will examine whether the ALJ's alternative step five findings are sufficient. Claimant's assertion that the ALJ failed to include all of her limitations in the RFC falls short as already explained herein. The vocational expert identified four jobs which could be performed by Claimant under her RFC and that the findings were consistent with the *Dictionary of Occupational Titles*. The ALJ's findings on this point are well-supported.

Claimant also attempts to argue the jobs identified did not exist in sufficient numbers. The multi-factor analysis for assessing whether a job exists in sufficient numbers espoused in

Trimiar v. Sullivan, 966 F.2d 1326 (10th Cir. 1992) is inapplicable in cases such as this one where the ALJ evaluated both the numbers in the regional and national economies. Raymond v. Astrue, 2009 WL 4799960, 4 n.2 (10th Cir.).

The question remaining is whether the jobs identified by the vocational expert exist in sufficient numbers in the national economy. The Tenth Circuit in Trimiar did establish that "[t]his Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number' and rejects the opportunity to do so here." Trimiar at 1330. Rather, an ALJ must explicitly set forth a discussion of the factors identified above in determining that the number of jobs a claimant can do exist in significant numbers and an ALJ's finding is sufficient if the record supports a conclusion that the ALJ used a common sense approach in "weighing the statutory language as applied to a particular claimant's factual situation." Johnson v. Colvin, 2014 WL 4215557, 3 (W.D. Okla.). Given the imprecise nature of this analysis, this Court is unwilling to find that 98,000 (parking lot attendant), 190,000 (small product assembler), 110,000 (table worker), and 72,000 (optimal goods assembler) represent an insignificant number of jobs. *See*, Rogers v. Astrue, 2009 WL 368386, 4 (10th Cir.)(testimony by vocational expert of 11,000 hand

13

packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability). Since at least one job exists in sufficient numbers which is not in conflict with the DOT, the ALJ had substantial evidence to support his step five determination.

**Credibility Determination**

The ALJ found Claimant was not "not credible" to the extent they differ from the already determined RFC. (Tr. 24). This Court has repeatedly rejected this statement as representing an improper analysis of credibility - a claimant's statements should be evaluated as a part of the RFC and not subsequent to its evaluation.

If this were the sole basis for degrading Claimant's credibility, this Court would reverse. However, the ALJ also stated that Claimant's daily activities are not limited as one would expect with Claimant's complaints of disabling symptoms and limitation. (Tr. 25). The ALJ pointed out that Claimant took care of her mother prior to her death. Claimant also received relatively conservative treatment for her conditions. No medical opinion evidence exists in the record to indicate Claimant is disabled. Claimant's last employment was terminated because of a background check not because of her impairments. (Tr. 26)

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give

reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). This Court finds that the ALJ's findings on credibility are affirmatively linked to the objective record and are supported by substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 29th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE